**IN THE UNITED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

F I L E D

NOV 2 4 1999

Phil Lombardi, Clerk
U.S. DISTRICT COURT

JACK DUBBS, Individually, and JACK )
DUBBS as Father and Next Friend of )
TIFFANI DUBBS, a minor, et al., )
                         )
       Plaintiffs. )
                         )
vs. )      Case No. 99CV0732B (E)
                         )
HEAD START, INC., an Oklahoma )
Corporation, et al., )
                         )
       Defendants. )

---

## COMMUNITY ACTION PROJECT OF TULSA COUNTY, OKLAHOMA'S BRIEF IN SUPPORT OF MOTION TO DISMISS

---

Respectfully submitted,

William S. Helfand
MAGENHEIM, BATEMAN, ROBINSON, WROTENBERY &
      HELFAND, PLLC
3600 One Houston Center
1221 McKinney Street
Houston, Texas 77010

-and-

John E. Dowdell, OBA #2460
Christine D. Little, OBA #16677
NORMAN WOHLGEMUTH CHANDLER & DOWDELL
2900 Mid-Continent Tower
Tulsa, Oklahoma 74103

**ATTORNEYS FOR DEFENDANT,**
**COMMUNITY ACTION PROJECT OF TULSA**
**COUNTY, OKLAHOMA**

DIB CI3

# TABLE OF CONTENTS

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    CAP is Not Subject to Suit Under 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . 3

    B.    The Plaintiffs Have Not Sufficiently Alleged any Claim
        of Constitutional Deprivation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        -- Plaintiffs fail to state a claim under the First Amendment . . . . . . . . . . 7

        -- Plaintiffs fail to state a claim under the Ninth Amendment . . . . . . . . . 9

        -- Plaintiffs do not state a claim under the Fourteenth Amendment . . . . . . 10

        -- Additional constitutional claims are not actionable . . . . . . . . . . . . . . 11

    C.    Plaintiffs Fail to State a Claim Under 42 U.S.C. §§ 1985 and 1986 . . . . . . 12

    D.    Plaintiffs Cannot Maintain any Claims against CAP under
        the Oklahoma Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    E.    Plaintiffs have not Stated a Claim for Invasion of Privacy . . . . . . . . . . . . 16

    F.    As a Matter of Law, the Conduct Alleged in the Complaint
        does not State a Claim for Intentional Infliction of Emotional
        Distress under Oklahoma Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    G.    Plaintiffs have no Claim for Negligent Infliction of Emotional Distress . . . . 20

    H.    The Parents Lack Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF MAILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

*Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807 (1994) . . . . . . . . . . . . . . . . . . . . . . 10

*Augustine v. Doe*, 740 F.2d 322 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689 (1979) . . . . . . . . . . . . . . . . . . . . . 6

*Bauchman v. West High School*, 132 F.3d 542 (10th Cir. 1997),
    *cert. denied*, 118 S. Ct. 2370 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Bohn v. Dakota County*, 772 F.2d 1433 (8th Cir. 1985),
    *cert. denied*, 475 U.S. 1014 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319 (10th Cir. 1977) . . . . . . . . . . . . . . 2

*Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1981) . . . . . . . . . 19

*De Graff v. State*, 103 P. 538, 541-52 (Okla. Crim. App. 1909) . . . . . . . . . . . . . . . . . 16

*Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990) . . . . . . . . . . . . . . . . . 13

*Duchesne v. Sugarman*, 566 F.2d 817 (2nd Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . 8

*Eddy v. Brown*, 715 P.2d 74, 76-77 (Okla. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 442 (10th Cir. 1995) . . . . . . . . . . . . 4

*Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632 (10th Cir. 1983) . . . . . . . . 4

*Graham v. Connor*, 490 U.S. 386 109 S.Ct. 1865 (1989) . . . . . . . . . . . . . . . . . . . . . 6

*Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 1798 (1971) . . . . . . . . . . . . . . . 13

*Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 13

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hester v. City of Milledgeville*, 777 F.2d 1492, 1494 n.3 (11th Cir. 1985) . . . . . . . . . . . 9

*Jojola v. Chavez*, 55 F.3d 488 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees,*
    495 F.2d 883, 887-88 (10th Cir.), *cert. denied,* 419 U.S. 1026 (1974) . . . . . . . . . . *16*

*Lugar v. Edmondson Oil Company,* 457 U.S. 922, 102 S.Ct. 2744 (1982) . . . . . . . . . . . . *4*

*Maher v. Durango Metals, Inc.,* 144 F.3d 1302 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . 2

*McCormack v. Oklahoma Pub. Co.,* 613 P.2d 737, 739 (Okla. 1980) . . . . . . . . . . . . . . 17

*Moten v. American Linen Supply,* 155 F.R.D. 202 (D. Kan. 1994) . . . . . . . . . . . . . . . . 3

*Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1340 (Okla. 1978) . . . . . . . . . . . *17*

*Oklahomans for Life, Inc. v. State Fair of Oklahoma, Inc.,*16
    634 P.2d 704, 707-08 and n.15 (Okla. 1981) . . . . . . . . . . . . . . . . . . . . . . . *8*

*Pittsley v. Warish,* 927 F.2d 3, 8 (1st Cir.), *cert. den'd.,* 502 U.S. 879 (1991) . . . . . . . . . . *5*

*Rendell-Baker v. Kohen,* 457 U.S. 830, 102 S.Ct. 2764 (1982) . . . . . . . . . . . . . . . . . 7

*Renn v. Garrison,* 100 F.3d 344 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121 (9th Cir. 1996) . . . . . . . . . *19*

*Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1558 (10th Cir. 1995) . . . . . . . . . . . . . . . . 9

*Strandberg v. City of Helena,* 791 F.2d 744 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . 3

*Swoboda v. Dubach,* 992 F.2d 286 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 7

*Tenenbaum v. Williams* ___ F.3d ___,
    1999 U.S. App. LEXIS 25518 (2d Cir., October 13, 1999) . . . . . . . . . . . . . . . 7

*Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998) . . . . . . . . . . . *13*

*Trujillo v. Bd. of County Commissioners of the County of Santa Fe,*
    768 F.2d 1186 (10th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Vernonia School District 47J v. Acton,* 515 U.S. 646, 115 S. Ct. 2386 (1995) . . . . . . . . . 19

*Weinrauch v. Park City,* 751 F.2d 357 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 4

*West v. Atkins,* 487 U.S. 42, 108 S. Ct. 2250 (1988) . . . . . . . . . . . . . . . . . . . . . . . 5

*Yin v. State of California*, 95 F.3d 864 (9th Cir. 1996),
 *cert denied*, 519 U.S. 1114 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes and Other Authorities**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 - 14

42 U.S.C. § 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 - 14

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

OKLA. CONST. art. 1, §§ 1, art. 2, §§ 2, 30 . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Restatement (Second) Torts, § 652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Laurence Tribe, *American Constitutional Law*, p. 776, n.14 (2d ed. 1988) . . . . . . . . . . . . 9

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JACK DUBBS, Individually, and JACK   )
DUBBS as Father and Next Friend of    )
TIFFANI DUBBS, a minor, et al.,       )
                                  )
        Plaintiffs.          )
                                  )
vs.                          )   Case No. 99CV0732B (E)
                                  )
HEAD START, INC., an Oklahoma     )
Corporation, et al.,             )
                                  )
        Defendants.        )

## COMMUNITY ACTION PROJECT OF TULSA COUNTY, OKLAHOMA'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Community Action Project of Tulsa County, Oklahoma ("CAP"), named among the Defendants in this lawsuit, submits this brief in support of its motion to dismiss for failure of the Plaintiffs to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to a significant number - practically all - of the asserted causes of action within the Complaint.

## FACTUAL BACKGROUND

Although couched in extensive, and sometimes inconsistent, prose, the Plaintiffs in this case, appearing both individually and on behalf of their minor children, complain that CAP, as a private, non-profit, grantee which administers the Head Start program in Tulsa County, with others, violated rights allegedly protected by the United States and Oklahoma Constitutions, committed intentional torts through its employees, and committed acts of negligence. A plain reading of the factual allegations within the Complaint reveals that the Plaintiffs actually complain of alleged medical

examinations supposedly conducted without the consent of the parents, in the course of the minors' participation in the Head Start program.[1]

The Plaintiffs wholly fail to identify *any* governmental action by CAP sufficient to state a claim against CAP for violation of any constitutionally protected civil right. Each of the claims premised upon constitutional claims should therefore be dismissed. Even if the Plaintiffs had asserted the requisite governmental action, as more fully set forth herein, to the extent that a medical examination of a minor child, allegedly without authorization or consent, is actionable under the United States Constitution, such an allegation would at best only support a Fourth Amendment claim, but no more. However, the Plaintiffs allege numerous federal and state constitutional violations, all of which, with the exception of the Fourth Amendment claim advanced by the minor children, are simply not cognizable against any defendant.

## STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, district courts take the allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998); *Bauchman v. West High School*, 132 F.3d 542, 550 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 2370 (1998). However, the Court will not consider allegations which amount to conclusions or opinions which have no corresponding factual allegations. *Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319, 1321

---

[1] Though not the subject of this motion, which challenges the Plaintiffs' threshold problems in attempting to state claims for relief against CAP, it should be noted that the factual premise of the Plaintiffs' claims - - the absence of consent - - is, at best, erroneous. There were consents. The existence of those consents raises a number of questions about the Plaintiffs' filing. If necessary, those questions will be the subject of subsequent proceedings.

(10th Cir. 1977). Only *well-pleaded* allegations, as distinguished from conclusory averments, are considered to be true for purposes of determining the motion. *Maher*, 144 F.3d at 1304; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). These deferential rules, however, do not allow the Court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Moten v. American Linen Supply*, 155 F.R.D. 202, 204 (D. Kan. 1994) (quoting *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 902 (1983)). Moreover, while all *reasonable* inferences are to be made in favor of a plaintiff, the plaintiff must set forth sufficient information to outline the elements of a claim or to permit inferences to be drawn that each of the requisite elements exists. *See id.*

The courts do not hesitate to dismiss cases where, as here, the facts alleged in the complaint do not support any viable theory of relief. *See Bauchman*, 132 F.3d at 562; *Maher*, 144 F.3d at 1304-07. These same principles apply to all claims, including those premised upon allegations of civil rights and constitutional violations. *See Bauchman*, 132 F.3d at 550; *Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993), appeal dismissed by 83 F.3d 433 (10th Cir. 1996). Under the applicable standard, Plaintiffs in this case have not stated any viable claim, and the Complaint should therefore be dismissed.

## ARGUMENT AND AUTHORITIES

### A.    CAP is Not Subject to Suit Under 42 U.S.C. § 1983.

The Plaintiffs' claims under 42 U.S.C. § 1983 are not cognizable as against CAP, because the Complaint is totally devoid of any allegations sufficient to demonstrate how this private, nonprofit entity could be liable for conduct that would be a constitutional violation, even if it

occurred. 42 U.S.C. § 1983 creates a federal cause of action for state deprivations of constitutionally protected civil rights. *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694 n.3 (1979). The Supreme Court addressed the analytical framework for determining whether acts fall under the scope of the § 1983 action in *Lugar v. Edmondson Oil Company*, 457 U.S. 922, 102 S.Ct. 2744 (1982):

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with deprivation must be a person who may fairly be said to be a state actor.

102 S. Ct. at 2754. The Tenth Circuit Court of Appeals has consistently recognized that the first prong of the Supreme Court's test requires that the alleged deprivation be attributable to, or result from, a governmental decision. *Cf., Gilmore v. Salt Lake Community Action Program*, 710 F.2d 632, 638 (10th Cir. 1983); *Weinrauch v. Park City*, 751 F.2d 357, 360 (10th Cir. 1984).

Accordingly, the Tenth Circuit has recognized that "the only proper defendants in a § 1983 claim are those who 'represent [the state] in some capacity, whether they acted in accordance with their authority or misused it.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d, 442, 447 (10th Cir. 1995) (quoting *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 461-62 (1988)). Thus, private conduct that is not "fairly attributable" to the State is simply not actionable under § 1983, "however discriminatory or wrongful" the conduct is. *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citations omitted).

The Plaintiffs have simply made no allegations sufficient to permit the assertion of a claim under 42 U.S.C. § 1983 against CAP because they assert no allegations which would permit a finding that CAP acted "under color of law." The Plaintiffs admit, at ¶ 33 of their Complaint, that

-4-

CAP is "an Oklahoma not-for-profit corporation." This private status precludes the assertion that CAP is a proper defendant under a § 1983 claim.[2]

The traditional definition of acting under color of state law requires that the defendant in a § 1983 have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)). Under the Supreme Court's definition, there is simply nothing within the Plaintiffs' Complaint which would permit a finding that the Plaintiffs have stated a claim upon which relief could be granted against CAP under 42 U.S.C. § 1983.

Indeed, the Supreme Court has expressly rejected the contention that a private educational institution, such as the one described by the Plaintiffs' Complaint, is a "state actor" sufficient to expose their allegedly unconstitutional conduct to claims for damages under § 1983. In *Rendell-Baker v. Kohen*, 457 U.S. 830, 102 S.Ct. 2764 (1982), the Supreme Court rejected arguments that state funding, extensive governmental regulation, or the role of the school in providing education to students outside of the public school system made the private school's conduct "state action" sufficient to expose the defendant to liability under § 1983:

> The school . . . is not fundamentally different from any private corporation whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts

---

[2]     Although the Plaintiffs make the blanket allegation that "all of the individual Defendants acted under color of state law, custom or usage," nothing contained within the Complaint identifies that any of the individual Defendants acted on behalf of CAP. (Complaint, ¶ 43). Furthermore, in light of the authority which generally recognizes the impropriety of a private defendant being sued for a § 1983 violation, some allegation, beyond this single, factually unsupported statement, would clearly be necessary. There is none.

of the government by reason of their significant or even total engagement in performing public contracts.

*Id.* at 2771. Notably, in the instant case, the Plaintiffs do not even attempt to explain the basis of their assertion of a claim under § 1983 against CAP which, as noted, they acknowledge is a private, non-profit corporation. It is clear, from review of both Supreme Court and Tenth Circuit precedent, that the Plaintiffs have not only failed to state a claim upon which relief may be granted against CAP under 42 U.S.C. § 1983, but they are also incapable of so doing. Accordingly, such claims, as described in Counts I, III, and IV of the Complaint, should be dismissed.

**B.      The Plaintiffs Have Not Sufficiently Alleged any Claim of Constitutional Deprivation.**

A claim alleging the deprivation of federal constitutional rights by one acting under color of state law is properly based upon the federal civil rights enforcement statute, 42 U.S.C. § 1983. *Augustine v. Doe*, 740 F.2d 322, 326 (5th Cir. 1984). However, that statute is not, in and of itself, a source of substantive rights. Instead, it merely provides a method for vindicating federal civil rights found elsewhere. *Baker v. McCollan,* 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694, n.3 (1979). Therefore, before a plaintiff can successfully state a § 1983 claim as a valid cause of action, the Court must first identify a specific constitutionally protected right that has been infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870 (1989). Further, in its opinion in *Graham*, the Supreme Court expressly eschewed general allegations of constitutionally protected civil rights and, instead, held that identification of the specific constitutional right allegedly infringed is the necessary first step in analyzing a claim of a § 1983 violation. *Id.* at 109 S.Ct. 1870. "'The first inquiry in any § 1983 suit' is 'to isolate the precise constitutional violation with which [the defendant] is charged.'" *Id.* (quoting *Baker v. McCollan, supra*). Accordingly, in analyzing the Plaintiffs' claims of a

constitutional violation, the Court must first identify, from the facts pled, the appropriate constitutional protection purportedly violated.

Circuit Courts have recognized that, under certain circumstances "requiring someone to submit to a medical examination . . . implicates the Fourth Amendment." *Yin v. State of California*, 95 F.3d 864, 870 (9th Cir. 1996), *cert denied*, 519 U.S. 1114 (1997) (citations omitted). *See also Tenenbaum v. Williams* ___ F.3d ___, 1999 U.S. App. LEXIS 25518 (2d Cir., October 13, 1999) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219 (1997)). While such allegations may implicate privacy considerations, a plaintiff must allege the requisite governmental action, which plaintiffs have failed to do. (*See* § A, *supra*). Even if there were such an allegation, plaintiffs have not stated any other cognizable constitutional claim, as discussed below. Moreover, to the extent that the Plaintiffs could ever state any Fourth Amendment claim, such claim could only be asserted on behalf of the minor children, and *not* the parent Plaintiffs.

### – *Plaintiffs fail to state a claim under the First Amendment* –

In Counts III (¶¶ 78 and 82) and IV (¶¶ 85 and 87), the Plaintiffs allege "substantive due process" and "parental liberty violations," respectively. Notably, however, the Plaintiffs also allege the very same rights, within the very same counts of their Complaint, as emanating from the Fourteenth Amendment.[3] Most courts have recognized a right of familial association emanating from the Fourteenth Amendment. *Cf., Renn v. Garrison*, 100 F.3d, 344, 349 (4th Cir. 1996). The

---

[3]     Indeed, in addition to the First and Fourteenth Amendments, the Plaintiffs point to the Fourth and Ninth Amendments as the sources of the "substantive due process" right which is the subject of their claim in Count III. Similarly, the Plaintiffs also identify the Ninth Amendment as the source of the "parental liberty" right upon which they rely in Count IV. The Bill of Rights is simply not as redundant as the Plaintiffs suggest.

-7-

Tenth Circuit has held that such a right derives from the First Amendment. See *Trujillo v. Bd. of County Commissioners of the County of Santa Fe*, 768 F.2d 1186 (10th Cir. 1985). However, regardless of the constitutional source of the right, it is considerably more circumscribed than the Plaintiffs suggest. It clearly does not extend to the factual situation described by the Plaintiffs here.

Claims relating to familial association rights have been strictly limited to those instances where state officials' actions: (i) were directly aimed at the parent-child relationship, *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir.), *cert. den'd.*, 502 U.S. 879 (1991); (ii) implicated the most essential and basic aspect of family privacy - the right of the family to remain together without the coercive interference of the awesome power of the state, *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2nd Cir. 1977); (iii) drove a wedge into family and threatened its very foundation; or (iv) eroded the family's solidarity internally and impaired the family's ability to function. *Bohn v. Dakota County*, 772 F.2d 1433, 1436 n.4 (8th Cir. 1985), *cert. denied*, 475 U.S. 1014 (1986). In *Trujillo*, the Court addressed a claim of the actual loss of a family member from the family unit. The Plaintiffs' allegations here fall far short of these types of claims and, accordingly, the Plaintiffs fail to state a claim, whether analyzed under the First or Fourteenth Amendment.

Indeed, the standard to state such a claim in this Circuit is even higher. The *Trujillo* court expressly required "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association" in order to state a claim under § 1983. 768 F.2d at 1190. In enunciating such a standard, the Tenth Circuit stated that it imposed a "state of mind requirement" of a specific intent to interfere with family relationship in order to state such a claim. *Id.* Of course, the Plaintiffs could not in good faith ever make such an allegation as to CAP. Because the Plaintiffs have not alleged (and cannot allege) even the basic elements of this claim, it is clear that they fail

to meet the *Trujillo* standard which, in addition to allegations approaching a destruction of the family unit, requires allegations setting forth such an intent. Accordingly, Counts III and IV, regardless what constitutional amendment Plaintiffs assert forms the basis of those claims, should be dismissed for failure to state a claim.

*-- Plaintiffs fail to state a claim under the Ninth Amendment –*

In addition to alleging a number of other constitutionally protected "rights," the Plaintiffs allege, in Count I (¶ 69), Count III (¶ 78 and 82), and in Count IV (¶ 87), violations of the Ninth Amendment to the United States Constitution. The Plaintiffs have clearly failed to state a claim for a violation of the Ninth Amendment and, in light of the provisions of the Ninth Amendment itself, the Plaintiffs are incapable of stating such a claim.

"It is a common error, but an error nonetheless, to talk of 'ninth amendment rights.'" The Ninth Amendment is not a source of rights as such; it is simply a rule about how to read the Constitution. Laurence H. Tribe, *American Constitutional Law*, p. 776 n.14 (2d ed. 1988). Accordingly, Courts have consistently held that "the Ninth Amendment 'has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation.'" *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (quoting *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991), *cert denied*, 503 U.S. 951 (1992)). "The Ninth Amendment has never been recognized as independently securing any constitutional right, for purposes of pursing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). *See also Gibson v. Matthews*, 926 F.2d 532 (6th Cir. 1991) and *Hester v. City of Milledgeville*, 777 F.2d 1492, 1494 n.3 (11th Cir. 1985). It is clear that the

Plaintiffs have failed to state, and are incapable of stating, a claim of a constitutional deprivation based upon the Ninth Amendment. Accordingly, such claims must be dismissed.

*-- Plaintiffs do not state a claim under the Fourteenth Amendment --*

The Plaintiffs' allegation of a Fourteenth Amendment violation in Count I, alleging an unreasonable search and seizure, is simply not actionable. Likewise, the Plaintiffs "substantive due process" claim, as described in Count III of the Complaint (¶¶ 76-87), fails to state a claim because it is premised on the same factual assertions upon which the Plaintiffs base their claim of a Fourth Amendment violation. The Supreme Court has held as follows:

> where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807 (1994) (quoting *Graham v. Connor*, 109 S.Ct. at 1865)). A claim of a medical examination without authorization is a claim of a search and is therefore governed by the Fourth Amendment's protection against unreasonable search and seizure. *Tenenbaum*, supra. Since such a claim emanates from the Fourth Amendment, the Supreme Court's opinions in *Albright* and *Graham* instruct that the Plaintiffs cannot also maintain a claim of substantive due process based upon the Fourteenth Amendment (or any other amendment). *See County of Sacramento v. Louis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 1715 (1998).

The Plaintiffs also fail to state a claim with respect to Count IV (¶¶ 83-87) to the extent that they assert an alleged Fourteenth Amendment violation of parental liberty. While, as previously addressed in connection with the Plaintiffs' First Amendment claims, the courts have recognized a constitutional liberty interest in the protection of the family as a unit, it is clear that the right which

Plaintiffs attempt to describe - regardless of its textual source - does not encompass the occurrence

of which the Plaintiffs complain. The Plaintiffs' claims in this regard fail in the absence of

allegations sufficient to demonstrate that CAP's (or the other Defendants') actions "were designed

to have had, or even will have, a significant impact on the parent-child relationship or on their

family[s'] ability to function [which] precludes the establishment of the family privacy infringement

of constitutional magnitude." *Hodge v. Jones*, 31 F.3d, 157, 164 (4th Cir.), *cert. denied*, 513 U.S.

1018 (1994) (citations omitted). The factual allegations contained within the Complaint, and

particularly those related to the Plaintiffs' allegation of First and Fourteenth Amendment rights of

asserted parental liberty and substantive due process are, as a matter of law, insufficient to state such

a claim.

### *-- Additional constitutional claims are not actionable --*

In addition to claims of constitutional deprivations based upon rights allegedly secured by

the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution, the Plaintiffs

also allege violations of various articles of the United States Constitution, the citation to which are

quite inexplicable since none seem to relate, even in the broadest terms, to the Plaintiffs' allegations.[4]

These are dealt with, at this point, simply by reference to the general terms of the articles cited since

even a cursory review of these articles demonstrates that the Plaintiffs' allegations, even if true,

could not be actionable under these provisions of the United States Constitution.

---

[4] The Plaintiffs also assert, in Count IV (¶ 85), that the actions they allege defendants undertook also violate 42 U.S.C §§ 1343 (3) and (4). This statute describes the jurisdiction of the federal district courts over civil rights claims. It does not provide any substantive right whatsoever.

For example, in Count I (¶ 69), Count III (¶¶ 78 and 82), and Count IV (¶ 87), the Plaintiffs contend that the Defendants' actions violated rights secured by Article IV, § II, Clause 1 of the United States Constitution. This provision does nothing more than guarantee to the citizens "of each state" all privileges and immunities of the citizens of the several states. To the extent that the Plaintiffs believe that this provision of the United States Constitution can form the basis of a claim under 42 U.S.C. § 1983, CAP respectfully submits that the Plaintiffs should be required by the Court, consistent with Rule 12(e) of the Federal Rules of Civil Procedure, to provide a more definite statement as to the basis for such a claim.

Similarly, in Count III, relating to the Plaintiffs' claim of a substantive due process violation, the Plaintiffs allege a right to privacy under Article IV, § II, Clause 1 (discussed *supra*) as well as Article I of the United States Constitution. As the Court is well aware, Article 1 of the United States Constitution creates, describes the design of, and empowers the Congress of the United States. The Plaintiffs' reliance upon this Article of the United States Constitution is truly inexplicable and, to the extent that the Plaintiffs believe that Article I of the United States Constitution provides to any of the Plaintiffs constitutional protections which have been violated by CAP as set forth in the Complaint, this Defendant would submit that, at a minimum, this Court should order the Plaintiffs to provide a more definite statement, consistent with Rule 12(e) of the Federal Rules of Civil Procedure, to explain the basis for such assertion.

C.     **Plaintiffs Fail to State a Claim Under 42 U.S.C. §§ 1985 and 1986.**

The Plaintiffs also make claims pursuant to §§ 1985(3) and 1986 for an alleged "conspiracy to deprive persons of equal protection of the laws." (Complaint, Count XIV). As with their other flawed efforts to state claims against CAP, the plaintiffs fail to state claims under these statutes as

well. Like § 1983, § 1985(3) "do[es] not create independent substantive rights; [it is a] procedural statute which provide[s] a remedy for deprivation of existing rights." *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990). As construed by the Supreme Court, § 1985(3) requires the plaintiff to allege and prove four elements:

    (1)    a conspiracy;

    (2)    for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

    (3)    an act in furtherance of the conspiracy;

    (4)    whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Grimes v. Smith*, 776 F.2d 1359, 1363 (7th Cir. 1985) (citing *United Brotherhood of Carpenters & Joiners of Amer., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356 (1983)). "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 1798 (1971) (emphasis in original). It is clear that in order to state a claim for conspiracy under § 1985(3),[5] the Plaintiffs must plead sufficient facts which, if proven, would show "a conspiracy of

---

[5]    It does not appear that the Plaintiffs are bringing suit for conspiracy pursuant to 42 U.S.C. § 1983. However, to the extent that such a claim may be alleged to be lurking in the shadows of the Plaintiffs' myriad theories, it must also be dismissed. In order to state a claim for conspiracy pursuant to § 1983, the Plaintiff must allege facts which, if true, would prove "not only a conspiracy, but also an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622 (1991). The Plaintiffs must also "allege sufficient facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "'Conclusory allegations of conspiracy are insufficient
(continued...)

two or more persons for the purpose of depriving another of equal protection of the law or equal privileges and immunities under the laws." *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990). In addition, the Plaintiffs must allege sufficient facts which would show "that a conspirator's action was motivated by a class-based, invidiously discriminatory animus." *Id.*

First, the Plaintiffs have failed to allege any facts which would support a claim that a conspiracy existed among or between the Defendants. The Plaintiffs have alleged no facts which would support that an agreement existed or that concerted action occurred to deprive the Plaintiff of equal protection of the laws. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). As such, the Plaintiffs' claims for conspiracy pursuant to § 1985(3) must be dismissed.

Second, even if this Court finds that the Plaintiffs have alleged sufficient facts to show that a conspiracy existed, this claim must still be dismissed as the Plaintiffs have failed to allege any facts that such a conspiracy "was motivated by a class-based, invidiously discriminatory animus." *Dixon*, 898 F.2d at 1447. The Plaintiffs have failed to even allege that they are members of any class of protected persons protected under the law. Hence, the Plaintiffs' claims for conspiracy pursuant to § 1985(3) must be dismissed.

As to the Plaintiffs' claims pursuant to § 1986, these too must be dismissed. "[T]here can be no valid claim under § 1986 of neglect to prevent a known conspiracy in the absence of a

---

[5](...continued)
to state a valid § 1983 claim." *Id.* (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir.), *cert. denied*, 513 U.S. 832, 115 S.Ct. 107 (1994)). Because the Plaintiffs have failed to allege any facts sufficient to show a deprivation of their constitutional rights, this claim, to the extent that it exists, must be dismissed. In addition, the Plaintiffs' bald and conclusory claims of conspiracy are insufficient, as the Plaintiffs have failed to allege any facts which would show an agreement to deprive the Plaintiffs of their constitutional rights or any concerted action amongst the Defendants to accomplish such an agreement.

conspiracy under § 1985." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). As it is clear that the Plaintiffs have failed to state a claim pursuant to § 1985(3), the Plaintiffs' claims pursuant to § 1986 must likewise fail.

### D. Plaintiffs Cannot Maintain any Claims against CAP under the Oklahoma Constitution.

In Counts II and V of the Complaint, plaintiffs allege violations of the Oklahoma Constitution, article 1, §§ 1 and 2, and article 2, §§ 2 and 30. (Complaint, ¶¶ 74, 76, 92). Plaintiffs have not stated any facts sufficient to support claims against CAP under any of those provisions. First, article 1, § 1 does not provide any independent basis for relief. That section merely provides that "[t]he State of Oklahoma is an inseparable part of the Federal Union, and the Constitution is the supreme law of the land." OKLA. CONST. art. 1, § 1. That section does not create or reserve any particular state rights to individuals.

Likewise, plaintiffs have not stated any violation of religious liberty under article 1, § 2 of the Oklahoma Constitution. That section provides:

> **Religious Liberty - Polygamous or plural marriages**
> Perfect toleration of religious sentiment shall be secured, and no inhabitant of the State shall ever be molested in person or property on account of his or her mode of religious worship; and no religious test shall be required for the exercise of civil or political rights. Polygamous or plural marriages are forever prohibited.

OKLA. CONST. art. 1, § 2. The Complaint does not contain *any* assertion that the plaintiffs' religious rights were violated in any manner. Any claim premised upon that provision must be dismissed.

Plaintiffs' allegations of "unreasonable search and seizure" (under art. 2, § 30) and violation of the "Plaintiff parents' right to control the care, custody, nurture and education of their children"

-15-

(under art. 2, § 2)[6] also fail to state any claim against CAP, because there is no allegation that CAP was involved in governmental action. As with claims of violations of the United States Constitution, claims under the Oklahoma Constitution require the presence of state action by a defendant. *See, e.g., Oklahomans for Life, Inc. v. State Fair of Oklahoma, Inc.*, 634 P.2d 704, 707-08 and n.15 (Okla. 1981). Article 2, § 30 of the Oklahoma Constitution is the equivalent of the Fourth Amendment, and the Oklahoma courts apply § 30 coextensively with the Fourth Amendment. *See Oklahoma Alcoholic Beverage Control Bd. v. Parkhill Restaurants, Inc.*, 669 P.2d 265, 270 (Okla. 1983); *De Graff v. State*, 103 P. 538, 541-52 (Okla. Crim. App. 1909). Because CAP is a private entity, plaintiffs' claims for constitutional violations, whether based upon federal or state law, are not sustainable. *See Junior Chamber of Commerce of Rochester, Inc. v. United States Jaycees, Tulsa, Oklahoma*, 495 F.2d 883, 887-88 (10th Cir.), *cert. denied*, 419 U.S. 1026 (1974); *Oklahomans for Life*, 634 P.2d at 707-09; *Stanfield v. State*, 666 P.2d 1294, 1296 (Okla. Crim. App. 1983). As previously discussed with respect to plaintiffs' federal constitutional claims under Counts I, III, and IV, plaintiffs' state constitutional claims against CAP must be dismissed. (*See* §§ A and B, supra).

### E.  Plaintiffs have not Stated a Claim for Invasion of Privacy.

In Count VIII of the Complaint, plaintiffs allege that defendants invaded the privacy of the minor plaintiffs "by conducting an unauthorized and unreasonable search." (Complaint, ¶ 97). The purported "search" consisted of a medical examination. (*See id.*, ¶ 2). These allegations do not state

---

[6]     While plaintiffs characterize OKLA. CONST. art. 2, § 2 as the "due process clause," that section does *not* reference due process. Instead, a separate provision provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." OKLA. CONST. art. 2, § 7. Because plaintiffs' allegations against CAP involve only private action, plaintiffs' "parental liberty" claim fails, regardless of whether it is characterized as a claim under § 2 or § 7.

a claim for invasion of privacy under Oklahoma law, as the theory alleged does not fall within any of the recognized privacy theories.

Oklahoma has adopted the Restatement (Second) Torts, § 652 for actions based upon invasion of privacy. *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1340 (Okla. 1978); *McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 739 (Okla. 1980). There are four distinct categories of invasion of privacy: (i) unreasonable intrusion upon the seclusion of another; (ii) appropriation of the other's name or likeness; (iii) unreasonable publicity given to the other's private life; and (iv) publicity that unreasonably places the other in a false light before the public. *McCormack*, 613 P.2d at 739 (citing Restatement (Second) Torts § 652A). The Complaint does not state a claim under any of those four recognized theories. Plaintiffs have clearly not asserted any claim based upon appropriation of the minors' names or likenesses, or based upon unreasonable publicity or false light.

Apparently, plaintiffs have attempted to allege a claim for unreasonable intrusion upon seclusion. However, the allegations of the Complaint, which are based upon physical examinations of the minor plaintiffs, also do not state a viable claim for intrusion upon seclusion. That tort "consists solely of an intentional inference with [the plaintiff's] interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." Restatement (Second) Torts § 652B, cmt. a. Intrusion upon seclusion does not include any conduct like the physical examinations at issue in this case. Instead, the intrusion upon "the person" as identified in the Restatement consists of "physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home." *Id.*, cmt. b. Other

-17-

forms of such intrusion include "looking into [plaintiff's] windows with binoculars or tapping his telephone wires," and "by opening his private and personal mail, searching his safe or his wallet." *Id.* Intrusion upon seclusion does not cover any allegations of touching or simple battery. *See id.*

Moreover, the conduct alleged by plaintiffs (that the minor plaintiffs were given physical examinations) does not rise to the requisite level of "highly offensive to a reasonable person." Restatement (Second) Torts § 652B. In order to be actionable as an invasion of privacy, conduct must be a substantial interference and must be a "substantial burden to [the plaintiff's] existence." *Id.*, cmt. d. A physical examination, particularly where that examination was a requirement for participation in the Head Start program, is not and cannot be considered "highly offensive to a reasonable person." Plaintiffs have not stated a claim for invasion of privacy, and Count VIII should therefore be dismissed with prejudice.

**F.** **As a Matter of Law, the Conduct Alleged in the Complaint does not State a Claim for Intentional Infliction of Emotional Distress under Oklahoma Law.**

In Count IX of the Complaint, plaintiffs allege that "[t]he actions of Defendants in carrying out and conducting unauthorized and unconsented to physical examinations, using a lance or other medical tool to pierce the skin of the minor Plaintiffs to draw blood from the minor Plaintiffs, and conducting blood analysis of the minor Plaintiffs contrary to their will and without their consent constitutes extreme and outrageous conduct." (Complaint, ¶ 100). The alleged conduct does not support a claim for intentional infliction of emotional distress.

In Oklahoma, in order to maintain a claim for intentional infliction of emotional distress, a plaintiff must allege and prove four elements: (i) intentional or reckless actions by the defendant; (ii) the defendant's conduct was extreme and outrageous; (iii); the plaintiff actually experienced

-18-

emotional distress; and (iv) the emotional distress was severe. *Starr v. Pearle Vision, Inc.*, 54 F.3d

1548, 1558 (10th Cir. 1995); *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.

1981); *see Eddy v. Brown*, 715 P.2d 74, 76-77 (Okla. 1986). The trial court must initially determine

as a matter of law whether the alleged conduct meets the extreme and outrageous standard necessary

to sustain a claim for intentional infliction of emotional distress. *Daemi*, 931 F.2d at 1387; *Breeden

v. League Servs. Corp.*, 575 P.2d 1374, 1377 (Okla. 1978). Specifically, the court must determine

whether the conduct "has been so extreme in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and be regarded as utterly atrocious, and intolerable in a civilized

community." *Breeden*, 575 P.2d at 1376.

      The conduct of which plaintiffs complain – conducting a physical examination of the minor

plaintiffs – does not rise to the level of being so extreme in degree, utterly atrocious, and intolerable

in a civilized society. As the court stated in *Vernonia School District 47J v. Acton*, 515 U.S. 646,

115 S. Ct. 2386 (1995):

> According to the American Academy of Pediatrics, most public schools "provide
> vision and hearing screening and dental and dermatological checks. . . . Others also
> mandate scoliosis screening at appropriate grade levels." In the 1991-1992 school
> year, all 50 states required public school students to be vaccinated against diphtheria,
> measles, rubella, and polio. Particularly with regard to medical examinations and
> procedures, therefore, "students within the school environment have a lesser
> expectation of privacy than members of the population generally."

*Id.*, 515 U.S. at 657, 115 S. Ct. at 2395. In *Acton*, the Supreme Court concluded that random drug

testing of students in a public school setting by "seizure" of the students' urine, and urinalysis, did

not violate the Fourth Amendment of the United States Constitution. In this case, the physical

examinations that are the subject of plaintiffs' action could not, as a matter of law, be so outrageous,

extreme, or utterly intolerable as to support the maintenance of a claim for intentional infliction of

emotional distress. Where, as here, the conduct alleged does not amount to extreme and outrageous conduct which causes severe emotional distress, dismissal is appropriate. *See, e.g., Brock v. Thompson*, 948 P.2d 279 (Okla. 1997).

### G.    Plaintiffs have no Claim for Negligent Infliction of Emotional Distress.

Under Oklahoma law, negligent infliction of emotional distress is not an independent tort. *Kraszewski v. Baptist Medical Center of Oklahoma, Inc.*, 916 P.2d 241, 243 n.1 (Okla. 1996). Oklahoma does not recognize an action in tort for alleged mental suffering caused by witnessing an injury to another where the person witnessing the injury was not a "direct victim" of the tortious conduct. *Id.* at 245. Specifically, in order to recover under such a negligence theory, the following elements are required: (i) the plaintiff was directly physically involved in the incident; (ii) the plaintiff was damaged from actually viewing the injury to another, rather than from learning of the incident later; and (iii) a familial or other close personal relationship existed between the plaintiff and the party whose injury gave rise to the plaintiff's mental anguish. *Id.* at 248. The facts as alleged in Count X of the Complaint – that the minor plaintiffs suffered severe emotional distress as a result of physical examinations – do not support any theory based upon negligent infliction of emotional distress, and that claim is not an independent tort under Oklahoma law.

Moreover, Oklahoma law requires that, to recover for mental distress under a negligence theory, the mental distress must be produced by, connected with, or the result of, some form of physical injury to the plaintiff. *Seidenbach's, Inc. v. Williams*, 361 P.2d 185 (Okla. 1961); *Richardson v. J.C. Penney Co., Inc.*, 649 P.2d 565, 566-67 nn. 2 - 4 (Okla. Civ. App. 1982). Plaintiffs have not alleged (nor can they allege) *any* physical injury. Because there is no allegation

of physical injury or suffering, the plaintiffs' claim for negligently inflicted emotional distress must be dismissed. *See Richardson*, 649 P.2d at 566-67.

**H.    The Parents Lack Standing.**

Although the parents of the minor children may appear on behalf of their children for the purpose of prosecuting claims on behalf of their respective children, the parents do not have their own claims against CAP, or any other defendant. The parents cannot assert federal constitutional claims based upon alleged deprivations of protected civil rights of their children and, as well, there appears to be no basis for the assertion of claims under the Oklahoma Constitution or the common law by any of these putative plaintiffs.

First, it is clear that the parents cannot assert constitutional claims, even if constitutional claims are cognizable, for alleged violations of their children's civil rights. The Tenth Circuit has expressly held that a "§ 1983 action is a personal suit." The cause of action does not accrue to a relative, even a father or mother. *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.), *cert denied*, 459 U.S. 826 (1982). Furthermore, as to the specific right implicated in the instant case, the Supreme Court has held that, "Fourth Amendment rights are personal rights which, like some other constitutional claims, may not be vicariously asserted." *Alderman v. U.S.*, 394 U.S. 165, 89 S.Ct. 961 (1969). Notably, in *Tenenbaum, supra*, the court affirmed the district court's dismissal of parental claims - many similar to those asserted herein - for a detention and allegedly unauthorized medical examination of their minor child. In so doing, the *Tenenbaum* court observed that, while the child could state a claim, the parents had no claim of a constitutional violation for the treatment of their daughter.

Second, while Oklahoma law may permit a parent to sue for *the parent's* own damages and expenses incurred for injuries to a minor child, the Complaint is completely devoid of any identifiable claim of damage beyond mental anguish allegedly suffered by *the children.* Accordingly, on the face of the Complaint before the Court, there is also no basis for any parent to claim standing as to common law claims.

## CONCLUSION

This is a troublesome case, not so much because of the facts alleged in the Complaint, but because those allegations bear such faint resemblance to the truth. The claims of these children, and their parents or legal guardians, arise from the administration of appropriate and standard physical examinations. These examinations were, without exception, expressly consented to by the Plaintiffs. As to many of the children, it was the first physical they had ever received. And many serious ailments were identified and thereafter successfully treated because of the physicals which underlie the Plaintiffs' claims.

Given the Plaintiffs' misrepresentations as to their consent to these examinations, it is not surprising that they would proceed to attempt to state a host of legal theories, most of them premised upon the United States and the Oklahoma Constitutions, which are fundamentally defective. For example, Community Action Project of Tulsa County, Oklahoma, is a private, not-for-profit agency, and not a state actor, as required by the bulk of the Plaintiffs' Constitutionally-based claims. Many of the Plaintiffs' claims are not legally cognizable claims at all.

This case should be dismissed, and the efforts of the Plaintiffs or their agents to utilize the legal process as a grandstand for publicity and economic benefit, where no such benefit is due, should cease.

Respectfully submitted,

_William S. Helfand_
William S. Helfand
MAGENHEIM, BATEMAN, ROBINSON, WROTENBERY &
   HELFAND, PLLC
3600 One Houston Center
1221 McKinney Street
Houston, Texas 77010
(713) 609-7700 Telephone
(713) 609-7777 Facsimile

- and -

_John E. Dowdell_
John E. Dowdell, OBA #2460
Christine D. Little, OBA #16677
NORMAN WOHLGEMUTH CHANDLER & DOWDELL
2900 Mid-Continent Tower
Tulsa, Oklahoma 74103
(918)583-7571 (Telephone)
(918)584-7847 (Facsimile)

**ATTORNEYS FOR DEFENDANT,
COMMUNITY ACTION PROJECT OF TULSA
COUNTY, OKLAHOMA**

-23-

## CERTIFICATE OF MAILING

I hereby certify that on the 24th day of November, 1999, a true and correct copy of the above and foregoing instrument was mailed to:

Christopher W. Goree, Esq.
Jack Y. Goree, Esq.
Goree & Goree, P.C.
6901 South Yorktown, Suite E
Tulsa, Oklahoma 74136

Leah Farish, Esq.
2834 East 26th Place
Tulsa, Oklahoma 74114-4310

John W. Whitehead, Esq.
Steven H. Aden, Esq.
Jennifer R. Schans, Esq.
The Rutherford Institute
P.O. Box 7482
1445 East Rio Road
Charlottesville, Virginia 22906-7482

Douglas J. Mann, Esq.
525 South Main, Suite 700
Tulsa, OK 74103-4508

Michael Pearce Atkinson, Esq.
Eric James Begin, Esq.
Marthanda J. Beckworth, Esq.
Roni Sue Rierson, Esq.
ATKINSON HASKINS NELLIS BOUDREAUX HOLEMAN
    PHIPPS & BRITTINGHAM
525 South Main, Ste. 1500
Tulsa, Oklahoma 74103

Fred R. Gibson, Jr., Esq.
University of Oklahoma
Health Sciences Center
Office of Legal Counsel
1000 Stanton L. Young Blvd., Rm. 233
Oklahoma City, OK 73190

John E. Dowdell