# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

JACK DUBBS, et al., )
 )
    Plaintiffs, )
 )
v. ) Case No. 99-CV-732-K(E)
 )
HEAD START, INC., et al., ) **FILED**
 )
    Defendants. ) MAY 1 6 2001

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## ORDER

Before the Court is the Motion for Summary Judgment (# 167) of Defendant Community Action Project of Tulsa County, Oklahoma (CAP).

### BACKGROUND

Plaintiffs' allegations stem from the physical examinations of minor children, who were participants in the Head Start Program at Roosevelt Elementary School. Head Start is a federally-funded program that provides educational and social services to low-income families and their children. Head Start Act, 42 U.S.C. §§ 9831 et seq. Plaintiffs consist of these children (Minor Plaintiffs) and their parents (Parent Plaintiffs). Plaintiffs allege that on November 5, 1998, the children were stripped of their outer clothing and subjected to a physical examination, including a survey of their genitals and the taking of a blood sample, without informed written parental consent. Plaintiffs have sued under multiple causes of action the various entities involved in the Head Start Program at Roosevelt Elementary School, including CAP, as well as the individuals allegedly involved in the examinations. CAP is the not-for-profit organization overseeing the



Head Start program in Tulsa during the events alleged. It is a "Head Start grantee" as defined by the regulations, i.e., an agency whose application to operate a Head Start program has been approved by the responsible HHS official. 45 C.F.R. §1302.2.

Plaintiffs alleged the following federal causes of action under 42 U.S.C. § 1983: unreasonable search and seizure in violation of the Minor Plaintiffs' Fourth and Fourteenth Amendment rights; lack of substantive due process by interfering with the right to privacy in violation of U.S. Constitution articles I and IV, § 2, clause 1.1; and amendments I, IV, IX, and XIV; and interference with Parent Plaintiffs' parental liberty rights in violation of U.S. Const. art. IV, § 2, cl. 1.1 and amends. I, IX, and XIV. Plaintiffs also alleged a conspiracy to deprive them of equal protection of the laws under 42 U.S.C. §§ 1985 and 1986. Finally, Plaintiffs asserted various state common-law and constitutional claims, including unreasonable search and seizure in violation of Okla. Const. art. 2, § 30; interference with parental liberty rights under Okla. Const. art. 1, §§ 1 and 2, art. 2, §§ 2 and 30; assault; battery; invasion of privacy; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence and gross negligence; and medical malpractice.

Plaintiffs' claims for lack of substantive due process and conspiracy to deny them equal protection of or equal privileges and immunities under the law were dismissed by this Court in an Order entered on July 11, 2000.

## APPLICABLE STANDARD

Summary judgment is appropriate if the court reviews all of the submitted evidence and concludes that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court views such evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998).

## DISCUSSION

The governing regulations require a grantee agency, no later than 90 calendar days from the child's entry into the program, to obtain from a health care professional a "determination as to whether the child is up-to-date on a schedule of age appropriate preventive and primary health care which includes medical, dental and mental health." 45 C.F.R. §1304.20(a)(1)(ii). In interpreting these regulations, the United States Department of Health and Human Services has established Performance Standards, which are interpretive guidelines. These Performance Standards were provided to CAP by the regional Department of Health and Human Services office. The Performance Standards applicable to 45 C.F.R. §1304.20(a)(1)(ii) provide in pertinent part that one role of the Head Start staff is to ensure that healthcare professionals have provided diagnostic testing and treatment, as needed. Agencies may also, working in collaboration with parents, arrange for staff from the local health department or health providers to come to the agency to provide services, in recognition that some parents may have difficulty taking children to medical or dental appointments. (See Exhibit A to CAP's supplemental brief).

45 C.F.R. §1304.20(a)(1)(ii) expressly provides that the schedule of preventive and primary health care must incorporate the requirements utilized by the Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program of the Medicaid agency of the State in which they operate. Those standards provide for a "complete physical assessment", which

3

includes an examination of "each body system", including genitalia. (See Exhibit B to CAP's supplemental brief).

The first step regarding a §1983 claim is to identify the specific constitutional right allegedly infringed. Morgan v. Gertz, 166 F.3d 1307, 1309 (10th Cir.1999). Here, plaintiffs contend the Minor Plaintiffs were subjected to an unreasonable search and seizure in violation of the Fourth Amendment and the Parent Plaintiffs' parental liberty interest protected by the Fourteenth Amendment has been violated.

Defendant initially attacks the Fourth Amendment claim at its most basic level, arguing that the constitutional provision is not even implicated by the conduct under review. The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . " U.S. Const. amend. IV. This constitutional safeguard is limited to government conduct which can reasonably be said to constitute a "search" or a "seizure" within the meaning of the Fourth Amendment. United States v. Attson, 900 F.2d 1427, 1429 (9th Cir.), cert. denied, 498 U.S. 961 (1990). The court in Attson ruled a government-employed doctor who drew a blood sample for medical reasons had not performed a "search" or "seizure" in violation of the Fourth Amendment. The Ninth Circuit stated the record did not reflect the doctor intended to elicit a benefit for the government in its investigative or administrative capacity and rather acted for a reason entirely independent of the government's intent to collect evidence for use in the defendant's prosecution. Id. at 1433.

In Kia P. v. McIntyre, 2 F.Supp.2d 281 (E.D.N.Y.1998), aff'd, 235 F.3d 749 (2d Cir.2000), the district court held that a urine test given for medical and not investigative purposes

4

did not constitute a "search" under the Fourth Amendment. CAP asserts the examinations in the present case were conducted for medical, rather than investigatory purposes, in accordance with the Head Start regulations. Therefore, CAP argues, no "search" or "seizure" took place.

The Court is not persuaded summary judgment should be granted on this basis. In its initial summary judgment brief, CAP stated authoritatively "[t]he evidence here directly refutes any suggestion that child abuse was even a consideration of the exam." (CAP's summary judgment brief at 12). Similar assertions are made on page 13 of the brief. In their brief responding to CAP's motion, plaintiffs state "[a]ccording to Misti Dubbs, Peggy Terry of CAP stated they were looking for signs of abuse." (Plaintiffs' response brief at 13). On one of the cited deposition pages, Misti Dubbs[1] testifies that, based upon what "Peggy" told her, it was Misti Dubbs' understanding that determination of child abuse was "the goal" and the "only purpose" of the exam. (Exhibit H to plaintiffs' response brief at 72).

CAP's reply brief does not address this testimony. In its supplemental brief filed March 30, 2001 at the Court's direction, CAP again states "there is no evidence that the physical examinations constituted a "search" within the context of the Fourth Amendment." (#252 at 13 n.1). In CAP's response to plaintiff's supplemental brief, filed April 19, 2001 again at the Court's direction, CAP once again asserts "there is no evidence that the purpose of the physicals was for any other purpose than to ensure that the Plaintiff children could participate in Head Start and that they were developing at an age-appropriate level." (#260 at 7).

---

[1]Misti Dubbs is the stepmother of Minor Plaintiff Tiffani Dubbs and is a teachers' aide at the Roosevelt site.

5

The Court disagrees, viewing the evidence in the light most favorable to plaintiffs. CAP does not explain how the deposition testimony of Misti Dubbs is properly characterized as "no evidence". In its most recent brief, CAP points to testimony of Jackie Strayhorn and Kim Baker, identified as "the medical professionals who conducted the examinations in this case," that detection of child abuse was not the purpose of the examinations and child abuse would be implicated only to the extent that signs of it were detected as part of determining the child's overall health status. Under the present record, this merely demonstrates a factual issue to be resolved by a jury. In the Court's view, the record is not clear enough to find as a matter of law no "search" was conducted. Dubbs' recitation of the Terry statement, apparently admissible as an admission by party-opponent under Rule 801(d)(2) F.R.Evid., exists in the record. Credibility determinations and weighing the evidence are jury functions. First Sec. Bank of New Mexico v. Pan Amer. Bank, 215 F.3d 1147, 1154 (10th Cir.2000). Summary judgment is inappropriate on this ground.

Assuming arguendo the physical examinations constitute "searches" within the Fourth Amendment, a new stage of the analysis is entered. CAP argues, and plaintiffs have not challenged, the application of the "special needs" doctrine. The Supreme Court has held that "to be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing," except in cases of "special need" based on "concerns other than crime detection." Chandler v. Miller, 520 U.S. 305, 313-14 (1997). Under the special needs doctrine, the Court identifies a special need which makes impracticable adherence to the warrant and probable cause requirements, then balances the government's interest in conducting the particular

search against the individual's privacy interests upon which the search intrudes. Earls v. Bd. of Educ. of Tecumseh Public School Dist., 242 F.3d 1264, 1269 (10th Cir.2001).

In the present case, CAP asserts as the "special need" that the physical examination of a child, "done in order to comply with federal regulations, is an effective means of identifying physical and developmental impediments in children prior to them starting school, a goal of Head Start . . . ." Again, plaintiffs have presented no argument that this assertion should not be accepted as a "special need". Upon review, the Court finds that it should be. CAP is bound to follow the Head Start regulations and those regulations require a health determination for each child. Even assuming arguendo that a subsidiary or peripheral effect of the examinations might be the discovery of child abuse, it is clearly impracticable to demand adherence to the traditional warrant and probable cause requirements considering the number of children dealt with by the Head Start program.

Accordingly, the Court next moves to the balancing test. Under a "special needs" analysis, the government need not show probable cause or even individualized suspicion for its search. Instead, it must prove that its search meets a general test of "reasonableness." Wilcher v. City of Wilmington, 139 F.3d 366, 373-74 (3rd Cir.1998). The factors developed by Supreme Court jurisprudence, primarily in the area of employee drug tests, are (1) the nature of the privacy interest upon which the search intrudes; (2) the extent to which the search intrudes on the individual's privacy; and (3) the nature and immediacy of the governmental concern at issue, and the efficacy of the means employed by the government for meeting that concern. Id. at 374.

Clearly, the genital area is one in which an individual possesses a legitimate expectation of privacy. However, the Supreme Court has held that students generally enjoy a lesser expectation of privacy than the public at large. Veronia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995). While it appears no published decision has addressed this issue regarding children in the Head Start program, the analogy between participation in a governmental program and participation in school seems a reasonable one.

Turning to the character of the government's search and the extent to which it intrudes on the individual's privacy, the degree of intrusion depends upon the manner in which the search is conducted and monitored. Id. at 658. It has not been disputed that a genital examination is a standard procedure in any well-child examination of any three or four year old child. Further, plaintiffs' own expert finds no fault with the examinations as conducted. No evidence has been presented that a child's genitals were gratuitously exposed or seen by anyone other than the medical professional. In Wilcher, firefighters complained of the "direct observation" method of urine collection, in which a testing employee is present in the room during collection to avoid possible tampering. The appellate court affirmed the district court's factual finding that the monitors' intent was direct observation of the urine collection process in general and not the intentional observation of the firefighters' genitalia. 139 F.3d at 375. The district court found that whatever observation of the genital area which had taken place was only a byproduct of the general observation of the donor. Id. at 371. In the case at bar, the genital examinations and blood tests were accepted portions of the required medical examination, and were conducted in a professional manner.

Finally, the Court finds the nature of the governmental concern to be compelling and relatively immediate. The Head Start regulations require a health determination to be made within ninety days of enrollment, and specifically contemplate a genital examination and blood test. Nothing in the record indicates the method chosen by CAP in this case was not an efficacious means to meet that concern. Thus, even assuming these medical examinations constitute "searches" under the Fourth Amendment, the Court finds they were "reasonable."

The parties, at the Court's urging, have devoted large amounts of their briefs to the issue of consent. Parent Plaintiffs have asserted the information they were provided and the consent forms which they signed did not provide sufficient information, particularly as to a genital examination. The Court has requested (and the parties have more than adequately complied with the request) supplemental briefing in the interest of a thorough ruling in this important case.

It should be remembered "[t]he touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991). What a citizen is assured by the Fourth Amendment is not that no government search of his house will occur unless he consents, but that no search will occur that is "unreasonable." Illinois v. Rodriguez, 497 U.S. 177, 183 (1990). When a claim of "apparent consent" is raised, what is at issue is not whether the right to be free of searches has been waived, but whether the right to be free of unreasonable searches has been violated. Id. at 187.

If the circumstances are such that a reasonable person would doubt a given representation, the officers cannot reasonably act upon that representation without further inquiry. Id. at 188-89. But the constitutional requirement is that they have a basis for a reasonable belief as to the

9

operative facts, not that they acquire all available information or that those facts exist. Id. at 185-86.

Parent Plaintiffs concede a consent to a physical examination, but deny they consented to a genital examination. In plaintiffs' supplemental brief they state "[t]he Parent Consent Form only lists specific procedures consented to" and "[a]nything not listed cannot have been consented to." (Plaintiffs' Supplemental Brief at 4). However, the Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to conduct the search that was undertaken. Jimeno, 500 U.S. at 249. The ultimate question is whether the officer had a reasonable basis for believing that there had been consent to search. United States v. Garcia, 56 F.3d 418, 423 (2nd Cir.1995). There is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained a valid consent to search the area. Rodriguez, 497 U.S. 177, 186 (1990).

The record reflects, in pertinent part, three different medical forms utilized by Head Start in this case: (1) a "Form 3" provided to each parent at the time of enrollment, to be completed by a medical professional; (2) a form titled "Parent Consent Form"; (3) a form titled "Authorization for Treatment to Minors". The Form 3 set forth all elements of the physical examination which was to be conducted, including a description on the face of the form of the systems that would be examined, which specifically included "genitalia". The other two forms were for parental signature.

As the Court has noted in previous Orders in this case, the consent forms are not models of draftsmanship. At one point in their supplemental brief, defendants assert the "Authorization for Treatment to Minors" form must be read in bifurcated fashion, the bottom half limited to emergency care and the top half not so limited. (Defendants' Supplemental Brief at 8). The language of the forms is ambiguous at times. For example, plaintiffs' expert Dr. Nelson testified that the "Authorization for Treatment to Minors" form is limited to treatment, as the title suggests. However, defendants point out that, in smaller print within the body of the form, it authorizes "diagnosis or treatment" (emphasis added), which more clearly suggests a routine physical examination. The forms utilized, as this litigation has brought home to CAP, could have been crafted more precisely. In other words, if the dispositive issue were whether Parent Plaintiffs gave a fully-informed consent to the specific procedures of genital examination and blood test, the Court would deny summary judgment based upon a genuine issue of material fact. The issue, instead, is whether CAP had an objectively reasonable, good-faith belief in the fact of consent and the scope of that consent. The Court concludes it did.

The Court finds that the forms provided the parents with sufficient notice that their children will be subject to examination and the "collect[ion]" of information in order to fulfill the health-related component of Head Start's mission. The Court takes notice of forms signed by Parent Plaintiffs for the following Minor Plaintiffs: Aguirre, Brown, Cowans, Crowley (only one of the two forms was located by the Court), Loftin, Porterfield and Suddarth. There does not appear to be any form for Minor Plaintiff Dubbs, but there is evidence that her step-mother, Misti Dubbs, was present at the examination. *See* Depo. of Misti Dubbs at 20-24. The presence of

Misti Dubbs at her step-daughter's examination suffices as parental consent for the examination to commence. Thus, it can be said that the examinations of all of the Minor Plaintiffs in this case were conducted with a reasonable belief that parental consent had been properly obtained and the scope included genital examination and blood tests.

As previously stated, the Plaintiffs' principal concern appears to be that, even if they did provide consent to medical treatment for their children, they were never warned that such treatment could include blood testing or genital inspection. However, as the Plaintiffs' expert witness, Dr. Fredric Nelson, points out, genital inspections are a routine part of a physical examination of children this age. *See* Depo. of Dr. Frederic Nelson at 66 ("I do not fault at all the conduct of the examinations that they did.") Dr. Nelson's statement is supported by the testimony of the other experts from the medical field who were deposed by the parties in this case. *See* Depos. of Dr. Hugh Graham at 10 ("[u]sually one does" examine the genitalia of children in well-child examinations); Dr. Sylvia August at 7; Dr. Muhammad Suhail at 20. The Parent Plaintiffs all agree that "an offer of genital exams was not made clear," but Plaintiffs have not provided any authority or evidence – testimonial or otherwise – that genital exams are not a proper ingredient of a routine well-child physical examination. Without any evidence of this, the Court is not persuaded that a parent's consent to medical examinations would reasonably be interpreted not to include a genital-exam component. The Parent Plaintiffs entrusted their children to the Head Start program knowing its mission and consenting to medical treatment of their children.

12

The issue of blood sampling is also a principal concern of the Plaintiffs. Like genital exams, the taking of blood samples is a routine portion of a well-child examination. *See* Depo. of Dr. Nelson at 149. If a medical professional proceeds with a routine examination under the reasonable belief that consent has been properly obtained for such an examination, there can be no Fourth Amendment liability for his or her performance. In addition, there is testimony that the risk of taking blood samples such as the ones in issue here is not great enough to require consent separate from a parent's general consent to examine the child. *See* Depo. of Dr. Suhail at 41-42.

Plaintiffs assert the Form 3 might be relevant to notice, but is not relevant to consent. This would be correct if not for the fact that "the concept of knowing and intelligent waiver, which is strictly applied to rights involving a fair criminal trial, does not govern in the Fourth Amendment context." Garcia, 56 F.3d at 422. Plaintiffs have not demonstrated that defendants did not have an objectively reasonable belief that the Form 3 gave Parent Plaintiffs at least constructive notice that the medical examinations would involve the genitalia and a blood test. When a consent form was signed, defendants also had an objectively reasonable belief that consent had been given to a standard physical examination, in all aspects. The Court declines to hold that informed consent must be obtained as to each specific procedure to be conducted in

what the medical community accepts as a proper examination for a child of this age[2]. Summary judgment is granted as to plaintiffs' Fourth Amendment claim.

Parent Plaintiffs also bring a constitutional claim on their own behalf. Parents have a fundamental liberty interest in the "care, custody, and management" of their children. Hollingsworth v. Hill, 110 F.3d 733, 738 (10th Cir.1997). Equally honored is the principle that parental consent must be secured before medical treatment is obtained. Parents United v. School Dist. of Philadelphia, 148 F.3d 260, 275 (3rd Cir.1998). As the Court has previously discussed, it finds CAP had an objectively reasonable belief that parental consent had been obtained. Thus, to the extent CAP was factually mistaken in its interpretation of the consent forms, this constitutes at most negligence. Liability under §1983 cannot be predicated upon negligence. Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir.1992). The plaintiffs' Fourteenth Amendment claim fails as well.

An additional ground exists to dismiss plaintiffs' constitutional claims, assuming arguendo a violation occurred. When the execution of a government's policy or custom deprives or violates the constitutional rights complained of by a plaintiff, the governmental entity may be responsible for the injury under §1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). The concept of municipal liability articulated in Monell applies to county governments and other local government units. Id. at 690 n.55. Isolated, unprecedented incidents

---

[2]The United States Supreme Court recently referred to "informed consent" in a case implicating the "special needs" doctrine. Ferguson v. City of Charleston, 121 S.Ct. 1281, 1287 (2001). This Court agrees with defendants that the statement represents dicta and in any event involved a search having direct law enforcement involvement, which the case at bar does not. This Court must follow the law as it presently exists.

are insufficient to create municipal liability. Doe v. Broderick, 225 F.3d 440, 456 (4th Cir.2000). No evidence has been presented of a pattern of conduct by CAP. A municipal policy or practice must be the "direct cause" or "moving force" behind the constitutional violation. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985). Jerome Lee, Director of CAP's Head Start program, states in his affidavit that "It is CAP's policy that all examinations be conducted with parental consent." No evidence has been presented raising a genuine issue of material fact on this point. Again, the Court is persuaded summary judgment is appropriate as to the constitutional claims.

Having found the defendants' actions did not violate the United States Constitution, the Court finds no violation of the analogous provisions of the Oklahoma Constitution. Cf. Sloan v. Sprouse, 968 P.2d 1254, 1258 (Okla.Crim.App.1998). Moreover, plaintiffs have not cited any authority that those provisions of the Oklahoma Constitution permit a private cause of action for civil damages.

Turning to the state law claims[3], plaintiffs seek to recover for intentional infliction of emotional distress. This claim, also known as the tort of outrage under Oklahoma law, requires a showing of conduct so outrageous in character and so extreme in degree as to beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Frank v. Mayberry, 985 P.2d 773, 776 (Okla.1999). The Court agrees with CAP that the evidence presented as to these medical examinations does not rise to the requisite level.

---

[3] In view of the length of this litigation, the Court elects to exercise supplemental jurisdiction over the state law claims despite the dismissal of the federal claims.

Plaintiffs' own experts have indicated that these were standard well-child examinations. Summary judgment is appropriate as to this claim as well.

Plaintiffs also seek recovery for negligent infliction of emotional distress. Under Oklahoma law, the negligent causing of emotional distress is not an independent tort, but is in effect the tort of negligence. Lockhart v. Loosen, 943 P.2d 1074, 1081 (Okla.1997). Oklahoma denies recovery for negligently inflicted mental distress alone. Richardson v. J.C. Penney Co., Inc., 649 P.2d 565, 566 (Okla.Ct.App.1982). For recovery, mental distress must be connected to some manifestation of physical suffering to the plaintiff himself. McMeakin v. Roofing & Sheet Metal Supply, 807 P.2d 288, 290 (Okla.Ct.App.1990). As constituting physical injury in this case, plaintiffs point to the lancing of each child's fingertip and the removal of clothing. Adopting such a standard would subject medical personnel to excessive risk of liability. The Court declines to do so, and grants summary judgment.

Plaintiffs also assert claims of battery and negligence. The elements of battery under Oklahoma law require a harmful or offensive touching. Instruction No. 19.6, Oklahoma Uniform Jury Instructions–Civil (Second Edition). The Court has found no decision in which a recognized procedure performed in the standard manner in a physical examination constitutes a harmful or offensive touching, and the Court declines to so find.

Further, if treatment is completely unauthorized and performed without any consent at all, there has been a battery. However, if the physician obtains a patient's consent but has breached his duty to inform, the patient has a cause of action sounding in negligence for failure to inform the patient of his options, regardless of the due care exercised at treatment, assuming there is

16

injury. Scott v. Braddford, 606 P.2d 554, 557 (Okla.1979). Here, consent was obtained, thus precluding a battery cause of action. Regarding any negligence or mistake as to the scope of informed consent, the Court reiterates plaintiffs have failed to prove any injury. The claims of battery and negligence fail as well.

Plaintiffs allege a cause of action for invasion of privacy. The only category of this tort which appears applicable is intrusion upon one's seclusion. The two elements to be proven are (1) a nonconsensual intrusion (2) which was highly offensive to a reasonable person. Gilmore v. Enogex, Inc., 878 P.2d 360, 366 (Okla.1994). The Court reiterates it is not persuaded the performing of a medical examination in a standard manner would be found highly offensive to a reasonable person. An invasion of privacy claim does not properly lie either.

## CONCLUSION

The Court concludes that, construing the evidence in the light most favorable to the non-movants, Plaintiffs have not demonstrated a violation of rights meriting relief. There is no evidence that the subject examinations were improperly conducted. There has been ample deposition testimony that no harm to Minor Plaintiffs resulted, physical or mental.

The Court understands the attitude of a parent to perceived "child abuse screening" but the evidence reflects the primary, if not sole, purpose of these examinations was medical

diagnosis and to comply with Head Start regulations.[4] Instead, the Court is convinced, these examinations were proper and routine procedures which were carried out in a manner consistent with existing medical standards. The Court is further satisfied that while the parents of Minor Plaintiffs may not have been notified of each element of the physical examination immediately prior to its occurrence, the parents had consented to medical treatment for their children while they were in the care of those administering the Head Start Program at Roosevelt Elementary. CAP had a reasonable, good-faith belief that such consent encompassed the panoply of procedures in a standard well-child examination. In light of these findings, there are no genuine issues of material fact remaining for trial.

---

[4] The Court notes that medical professionals are required by Oklahoma statute to report any evidence of child abuse that they may encounter during a routine or similar examination. *See* 10 O.S. § 7103, 7104.

IT IS THEREFORE ORDERED that the motion for summary judgment filed by Defendant Tulsa Community Action Project (# 167) is hereby GRANTED.

ORDERED THIS _16_ DAY OF MAY, 2001.

TERRY C. KERN, CHIEF
UNITED STATES DISTRICT JUDGE